**INTERCHANGE OFFICE PARK, LTD., and Texan Homes, Inc., Plaintiffs,**

v.

**STANDARD INDUSTRIES, INC. and Gerald Dubinski, Defendants.**

No. SA–84–CA–2457.

United States District Court, W.D. Texas, San Antonio Division.

Feb. 26, 1987.

Fred Shannon, Martin Shannon & Drought, Inc., San Antonio, Tex., for plaintiffs.

Reese Harrison, Jr., Ron Ricks, Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, Tex., for defendants.

## ORDER

H.F. GARCIA, District Judge.

Plaintiffs Interchange Office Park, Ltd. and Texan Homes, Inc. instituted this action against defendants Standard Industries, Inc. and Gerald Dubinski under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), Title 42 U.S.C. Section 9601 et seq., for damages they allegedly sustained in removing lead contamination and pollution from certain tracts of land sold to them by defendants. The land was acquired in 1980 by plaintiffs for commercial, office and multifamily residential development. In the spring of 1984, the Texas Department of Water Resources notified them of the existence of the lead contamination. Plaintiffs allege they have expended approximately $2,000,000.00 to clean up the site to render it safe and suitable for development, and they seek to recover those expenses from defendants in this lawsuit. Defendants have filed motions to dismiss plaintiffs' original complaint and plaintiffs' first amended complaint for failure to state a claim upon which relief can be granted. They contend that no private right of action exists under CERCLA in the absence of: (1) a listing of the site in question on the Environmental Protection Agency (EPA) National Priorities List (NPL); (2) a CERCLA response plan approved by an appropriate government agency; (3) allegations that the disposal of hazardous materials constituted a release or a threatened release, which caused response costs to be incurred; and (4) a proper demand letter served upon defendants. Having reviewed the pleadings and the applicable law, the

Court is of the opinion the motions should be denied.

## CERCLA

Congress enacted CERCLA in 1980 to provide a comprehensive response to the problem of hazardous substance release. CERCLA implements this plan through an array of mechanisms. Section 9605 authorizes the President to incorporate into the national contingency plan (NCP) (established at Title 33 U.S.C. Section 1321(c)) "procedures and standards for responding to releases of hazardous substances...." Section 9631 establishes the Hazardous Substance Response Trust Fund, better known as Superfund, to finance response measures by the federal government that are consistent with the NCP. It also finances private response costs that are approved under the NCP and are federally certified. Title 42 U.S.C. Section 9611(a)(2). In addition, the federal government may seek judicial relief from the actual or threatened release of a hazardous substance. Title 42 U.S.C. Section 9606. Section 9607(a) makes certain parties, responsible for the presence of hazardous substances, liable to the federal and state governments for response costs. That section also makes responsible parties liable to private persons for response costs.

Plaintiffs claim defendants are liable for the lead contamination under section 9607(a)(2), as the owners and operators of a facility at the time hazardous substances were disposed of, and under section 9607(a)(4), as persons who accepted hazardous substances for transport to disposal or treatment facilities or sites from which there is a release, or a threatened release, of a hazardous substance. They assert entitlement to recovery of the response costs they incurred consistent with the NCP. Title 42 U.S.C. Section 9607(a)(4)(B). "Response" is defined as removal and remedial action. Title 42 U.S.C. Section 9601(25). "Removal" means the evaluation, cleanup, removal and disposal of released hazardous substances, or such actions as may be necessary in the event of the threatened release of such substances, and to minimize or mitigate damage to the public health or welfare or to the environment. Title 42 U.S.C. Section 9601(23). As opposed to removal, "remedial action" is action consistent with a permanent remedy taken instead of or in additional to removal actions in the event of a release or threatened release of a hazardous substance. Title 42 U.S.C. Section 9601(24). Plaintiffs allege that in response to the lead contamination, they evaluated the nature and extent of the pollution and have conducted removal and remedial action pursuant to a plan to clean up the land.

### Listing on National Priorities List

As part of the NCP, CERCLA requires the President to list national priorities among the sites of known releases or threatened releases in the United States. Title 42 U.S.C. Section 9605(8)(B). The EPA has developed the NPL, which can be found at Title 40 C.F.R. Part 300, Appendix B. Since under section 9607 a private party can recover only those response costs which are consistent with the NCP, defendants argue that absent the presence of the site in question on the NPL plaintiffs cannot satisfy a necessary prerequisite to this cause of action.

The same argument was made and rejected in *State of New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir.1985). In that case, the State of New York sued Shore under CERCLA to clean up a hazardous waste disposal site acquired by Shore for development purposes. The Court of Appeals held that a national priorities listing is not a general requirement under the NCP, but is a limitation on remedial, as opposed to removal actions, particularly federally funded remedial actions. 759 F.2d at 1046. At least two district courts have further held that a national priorities listing is not a prerequisite to a private action. In *Pinole Point Properties v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 290 (N.D.Cal.1984), the District Court held that the limitation in Title 40 C.F.R. Section 300.68(a) of remedial actions to inclusion on

the NPL applied only for purposes of response financed by the Superfund, and concluded that consistency with the NCP, not appearance on the NPL, is all that is required under section 9607(a)(4)(B). In *Allied Towing v. Great Eastern Petroleum Corp.*, 642 F.Supp. 1339, 1349 (E.D.Va. 1986), the District Court held that an NPL listing was not a precondition to the recovery of costs reasoning that such a requirement would render the citizen's suit provision less effective and would conflict with the EPA's construction of section 9607. Based upon the above authorities, this Court holds that an NPL listing is not a prerequisite to a private action to recover response costs for removal or remedial action on a hazardous waste disposal site.

*Necessity of Government Authorization*

■ Defendants further contend, relying upon *Bulk Distribution Centers, Inc. v. Monsanto Co.*, 589 F.Supp. 1437, 1446 (S.D.Fla.1984), that a private party cannot incur response costs until the appropriate federal or state agency has authorized and approved the removal or remedial action plan. *See, Artesian Water Co. v. Government of New Castle County*, 605 F.Supp. 1348, 1357–1361 (D.Del.1985). Other district courts have found that consistency with the NCP does not require government pre-authorization or supervision for private actions, *Pinole Point Properties, Inc.*, 596 F.Supp. at 290, and is necessary only when reimbursement for response costs is sought from the government. *Fishel v. Westinghouse Electric Corp.*, 617 F.Supp. 1531, 1535 (M.D.Pa.1985). In asserting the necessity of government authorization, defendants also rely on the district court decision in *Wickland Oil Terminals v. Asarco, Inc.*, 590 F.Supp. 72 (N.D.Cal.1984). In apparently the only Court of Appeal's opinion to consider this issue, the Ninth Circuit reversed that decision. *Wickland Oil Terminals v. Asarco*, 792 F.2d 887 (9th Cir. 1986). The appellate court discussed the EPA interpretation of the NCP effective at the time response costs were incurred, that no federal approval of any kind is a prerequisite to a cost recovery under section 9607.

It concluded that a government authorized cleanup program is not a precondition to a private damage action under section 9607. 792 F.2d at 892. *Also see, NL Industries, Inc. v. Kaplan*, 792 F.2d 896 (9th Cir.1986). *Allied Towing*, 642 F.Supp. at 1349. This Court also holds that approval of the cleanup plan by a federal or state agency is not a prerequisite to a private action under CERCLA.

*Necessity of Release*

■ Defendants next argue that plaintiff's complaint is defective for alleging only the deposit of hazardous waste, and not the release of hazardous waste. As previously defined, "removal" and "remedial action" are appropriate in response to the release or threatened release of a hazardous substance. "Release" is defined in CERCLA as any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment. Title 42 U.S.C. Section 9601(22). In their first amended complaint, plaintiffs allege that defendants deposited, dumped and disposed of lead on the site in question. The Court finds plaintiffs have adequately alleged that defendants released lead into the environment.

*Demand Letter*

In their final contention, defendants argue that no private action exists under CERCLA in the absence of a proper demand letter, served upon the party alleged to be responsible for response costs, specifying a "sum certain." Section 9612(a) provides that:

"All claims which may be asserted against the Fund pursuant to section 9611 of this title shall be presented in the first instance ... to any other person known to the claimant who may be liable under section 9607 of this title. In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the claimant may elect to commence an action in court against such ... other per-

son or to present the claim to the Fund for payment."

The District Court in *Bulk Distribution Centers* held that before a private claimant can commence a cost recovery action against other parties under section 9607, it must first serve on them a letter demanding a "sum certain" to cover the costs of the cleanup operation. 589 F.Supp. at 1448.

 In *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1082 (1st Cir.1986), the Court of Appeals, after analyzing case law, the language and structure of CERCLA, its legislative history, and Congressional purpose, concluded that a party seeking to recover response costs under section 9607 need not comply with the notice provisions of section 9612(a). Such notice is only necessary when a claimant seeks reimbursement from the Superfund under Section 9611. 805 F.2d at 1077. *See, Utah State Department of Health v. Peter NG, Questar Corp.*, 649 F.Supp. 1102 (D.Utah 1986). *State of New York v. General Electric*, 592 F.Supp. 291 (N.D.N.Y.1984). Since this lawsuit does not involve the Superfund, plaintiffs were not required to send a demand letter to defendants under section 9612.

### Conclusion

Plaintiffs have brought a purely private cause of action against defendants to recover costs expended to conduct removal and remedial actions in response to lead contamination. Neither the federal or state government nor the Superfund has any connection with this lawsuit. The reasons for requiring government authorization of a cleanup program, a listing of the cite on the NPL, and a demand letter do not exist here. As stated in *Dedham Water Co.:*

> "CERCLA is essentially a remedial statute designed by Congress to protect and preserve public health and the environment. We are therefore obligated to construe its provisions liberally to avoid frustration of the beneficial legislative

purposes ... With this in mind, we join the Second Circuit in proclaiming that '[w]e will not interpret section 9607(a) in any way that apparently frustrates the statute's goals, in the absence of a specific congressional intent otherwise.' *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1045 (2d Cir.1985)." 805 F.2d at 1081.

 Plaintiffs have sufficiently stated a cause of action under section 9607(a) to recover response costs. Whether those costs are consistent with the NCP is a factual determination for trial. *Fishel*, 617 F.Supp. at 1535. *Pinole Point Properties, Inc.*, 596 F.Supp. at 290. Plaintiffs' pleadings are sufficient to withstand defendants' motion to dismiss.

It is, therefore, ORDERED that defendants' motions to dismiss be, and they hereby are, DENIED.