**FIRST SAN DIEGO PROPERTIES,**
**Plaintiff,**

v.

**EXXON COMPANY, et al., Defendants.**

**Civ. No. 93–1429–E(BTM).**

United States District Court,
S.D. California.

July 25, 1994.

McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, John M. Rochefort, Samuel Taylor, Mark Koorenny, Los Angeles, CA, for Exxon Co.

Andrew K. Ulich, Thomas J. Bois, II, Jeffrey Dill, Meserve, Mumper & Hughes, Irvine, CA, for plaintiff First San Diego Properties XX.

### MEMORANDUM DECISION AND ORDER

ENRIGHT, District Judge.

### BACKGROUND

In this motion the court addresses the difficult issue of potential passive liability of a subsequent purchaser in the context of a Resource Conservation and Recovery Act (RCRA) action arising from the release of materials from an underground gasoline storage tank.

This suit arises from the purchase and ownership of a property located at 3148 Midway Drive, San Diego. Plaintiff, a limited partnership purchasing properties for investment, purchased the property in 1985. Allegedly unknown to the plaintiff, the property had been used from 1945 to 1984 as a gasoline station, and the soil under the property had become contaminated as a result of leaking underground storage tanks. The old underground gasoline storage tanks were removed in 1984. In 1985, in conjunction with the sale of the property, new underground tanks were installed and a concrete pad placed over them. During the negotiations for the sale of the property, one of the named defendants, the Parsley/Kennedy Company, who was then the current owner of the property, informed the plaintiff that new underground storage tanks had been installed on the property and, therefore, it was suitable for a convenience store/gas station. The Parsley/Kennedy agents stated the three tanks had not been put into use. The same allegedly unused storage tanks remain in place to present.

Plaintiff purchased the property to use it as a shopping center, and plaintiff asserts that no gasoline station was ever intended to be used or was used by the plaintiff on the site. Defendant Exxon's role in the litigation is based upon Exxon's role as supplier of gasoline to the station and its alleged responsibility for all maintenance and repairs on the station for a limited time period. On October 1, 1990, after their purchase in 1985, plaintiff discovered the property was extensively contaminated. Over 1 million gallons of contaminated groundwater and an undetermined amount of contaminated soil were discovered at the site. Plaintiff states remediation of the site would include the removal of the storage tanks. Plaintiff alleges that defendant Parsley/Kennedy was aware of the contamination when it sold the

property. Plaintiff alleges defendant Parsley/Kennedy became aware of the contamination when it removed the old tanks on June 11, 1984, and the contractor involved in the removal told the defendant Parsley/Kennedy that the contaminated soil should be removed, and the contamination should be reported to the Regional Water Quality Control Board. Defendant Parsley/Kennedy allegedly failed to remove the contaminated soil and failed to report the contamination to the Regional Water Quality Control Board.

On September 20, 1993, plaintiff filed suit for causes of action under RCRA, California state hazardous waste laws, and for negligence, nuisance, misrepresentation, equitable indemnity and declaratory relief.

On January 27, 1994, defendant Exxon answered and filed a counterclaim against plaintiff pursuant to 42 U.S.C. § 6972 (RCRA citizen suit provisions). Defendant Exxon alleged that plaintiff as the owner of the property was jointly and severally liable for costs associated with remediation of the property. Exxon basically sought contribution from plaintiff based upon their status as a current owner of the contaminated site. On March 29, 1994, the court dismissed Exxon's claims, allowing them 30 days leave to amend. The court held that a suit could not be maintained under RCRA against a subsequent owner of a contaminated site, who had no knowledge of the contamination prior to purchase, and who did not deposit or add any on the waste to the site, based upon their mere status as owner.

Exxon has amended their complaint to assert that since 1985 plaintiff knew or had cause to know the property had been used as a gas station and was contaminated. Exxon asserts that since 1985 plaintiff has not properly "investigated, assessed, remediated or abated the alleged soil and/or groundwater contamination at the Property; which plaintiff claims pose an imminent and substantial endangerment to health or the environment." Exxon states "as a consequence of plaintiff's indifference to the environmental condition," the contamination has migrated throughout the soil and groundwater exacerbating the environmental condition and substantially increasing the cost of clean up. Defendant alleges that plaintiff as a result has contributed to the hazardous condition of the property which poses an imminent and substantial endangerment to the health and the environment.

Plaintiff seeks dismissal of the amended counterclaim of defendant Exxon based upon Exxon's alleged failure to plead sufficient facts to support a claim pursuant to Fed. R.Civ.P. 12(b)(6).

### STANDARD

■ Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss claims that fail "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6) also provides that if "matters outside the pleading are presented to and not excluded by the court," a motion to dismiss may be treated as one for summary judgment under Rule 56. In ruling upon a motion to dismiss, a court must accept all material allegations in the complaint as true and must construe the implications which arise most favorably to the plaintiff. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.1986). The court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally no, the motion must be denied. De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir.1978).

### DISCUSSION

■ The basic issue to be addressed in this motion is whether a subsequent purchaser of previously contaminated property who has allegedly become aware of the contamination, but has taken no or inadequate steps to mitigate/remediate the harm over a period of time, but also has not affirmatively added wastes to the site, may be liable under the citizen suit provisions of RCRA by a party who was involved with the site during its actual contamination.

This court holds that under the circumstances of this case, the claims against the plaintiff may be properly dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

RCRA 42 U.S.C. § 6972(a)(1)(B) authorizes citizen suits for contribution "against

any person ... including any ... past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *Id.*

As the court previously stated in the decision of March 29, 1994 at page 4, for contributor liability under § 6972(a)(1)(B) to attach, the party must have "contributed to" to the past or present handling, storage, treatment, transportation or disposal of hazardous waste. The court has held the term "contributing" infers something more than mere ownership of site, but some sort of causal link between the contamination and the owner. *See* March 29, 1994 decision at p. 4–7; *Zands v. Nelson,* 779 F.Supp. 1254, 1264 (S.D.Cal.1991) (Zands I); *Zands v. Nelson,* 797 F.Supp. 805 (S.D.Cal.1992) (Zands II).

The court finds that plaintiff since purchasing the property has never used the new storage tanks, and has added no contaminants to the property during the plaintiff's ownership period. Although plaintiff did not affirmatively place contaminants into the soil, the issue remains whether plaintiff's subsequent action or inaction could be considered "contributing to" in the context of a RCRA claim. The court finds that under the circumstances of this case the plaintiff will not be considered a contributor under the RCRA citizen suit provisions and, as such, defendant's amended counter claim is properly dismissed.

Defendants directed the court to the case of *United States v. Price,* 523 F.Supp. 1055 (D.N.J.1981) to support the proposition that even passive inaction by a subsequent purchaser may rise to a level of "contributing to" under RCRA and support claims under § 6972(a)(1)(B). Under the facts presented in this case the court is unwilling to follow the *Price* court's ultimate determination. In the case at bar, important differences are presented in the fact pattern. In *Price,* the subsequent purchaser knew the site had been used as a landfill when they purchased it. Here, the plaintiff was not aware when they

purchased the property that it was ever used as a gasoline station. Also a more important distinction is the *Price* court was dealing with an EPA sponsored suit against numerous current and past owners for contribution, and the *Price* court may have been more receptive to an expansive application of passive liability to ensure the broadest range of sources for cleanup funds on behalf of the EPA. Here, the party bringing the counter claim is seeking to offset their own potential liability with a subsequent purchaser's contribution. This court finds the dynamics of the contribution context of a government suit and a private suit by a potentially liable party to be different and, as such, require a different analysis. At this juncture, the court is unwilling to expand the doctrine of passive liability to subsequent purchasers in this context. The court is unaware of any case law which imposes RCRA liability under similar circumstances. Therefore, the court finds defendant Exxon's amended counter claim is properly dismissed.

As an additional matter, the plaintiff requested leave to file an amended complaint; the defendant did not oppose the request, and the court grants plaintiff's request to amend.

### CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby grants plaintiff's motion for leave to amend and motion to dismiss first amended counterclaim of defendant Exxon.