**Denise P. EDWARDS, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**The FIRST AMERICAN CORPORATION, et al., Defendants.**

No. CV 07–3796 SJO (FFMX).

United States District Court, C.D. California.

Oct. 11, 2007.

Cyril V. Smith, Zuckerman Spaeder, Baltimore, MD, David Oakley, Edward G. Kramer, The Fair Housing Law Clinic, Cleveland, OH, James W. Spertus, Lawrence C. Jones, James W. Spertus Law Offices, Los Angeles, CA, Martin E. Wolf, Richard S. Gordon, Quinn Gordon & Wolf, Towson, MD, for Plaintiff.

Bradley A. Benbrook, Charles J. Stevens, Stevens & O'Connell, Sacramento, CA, Gustavo A. Torres, Joel D. Siegel, Bryan Cave, Santa Monica, CA, Charles A. Newman, Darci F. Madden, Douglas W. King, Byran Cave LLP, St. Louis, MO, for Defendant.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS [Docket No. 29]

S. JAMES OTERO, District Judge.

This matter is before the Court on Defendants First American Corporation ("First American") and First American Title Insurance Corporation's ("First American Title") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, filed August 7, 2007. Plaintiff Denise Edwards ("Edwards") filed an Opposition, to which Defendants replied. Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7–15, the Court found this matter suitable for disposition without oral argument and vacated the hearing set for September 4, 2007.

## I. BACKGROUND

Plaintiff Denise Edwards purchased a home, choosing Tower City Title Agency. LLC as her settlement agent to conduct the closing. Edwards and the seller sought to purchase insurance, and Tower City referred them to First American Title. Edwards alleges that Defendants have formed agreements with various title agencies such as Tower City in which Defendants paid large sums of money in exchange for exclusive referral arrangements that funnel all of the! title agencies' business to Defendants.

Edwards brings suit on behalf of all consumers who purchased title insurance through a title agency subject to an exclusive referral agreement with First American Title under the Real Estate Settlement Procedures Act ("RESPA"), a statute that aims to "eliminat[e] kickbacks and referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(2).[1]

## II. DISCUSSION

Defendants move to dismiss, arguing that (1) Edwards lacks standing, (2) her claim is barred by the statute of limitations, and (3) her allegations do not state a valid claim.

### A. Edwards Has Standing to Pursue a RESPA Claim.

 The constitutional requirements of standing are well-known: a plaintiff must demonstrate an injury (2) traceable to the defendant's actions that (3) can be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). "[S]tanding is an aspect of subject matter jurisdic-

---

1. Unless otherwise indicated, all section numbers refer to Title 12 of the United States Code.

tion...." *Fleck & Assocs. v. City of Phoenix,* 471 F.3d 1100, 1107 n. 4 (9th Cir. 2006).

■ Upon determining that subject matter jurisdiction is lacking, the Court must dismiss the action. Fed.R.Civ.P. 12(hX3). Because a motion to dismiss for lack of standing is a motion to dismiss for lack of subject matter jurisdiction, the Court must accept all allegations of fact in the complaint as true and construe them in the light most favorable to Plaintiffs. *Zimmerman v. City of Oakland,* 255 F.3d 734, 737 (9th Cir.2001).

Defendants argue that Edwards lacks standing because she has not suffered an injury. (Mot.6–10.) Edwards admits that the cost of title insurance in Ohio is regulated so that all insurance providers charge the same price, but contends that under RESPA she is entitled to damages in the amount of three times the total she paid for that insurance.

■ Although Defendants are correct that Congress cannot abrogate, override, or change the constitutional standing requirements (Mot.8), "Congress retains broad authority to create injuries that are the basis for standing." Erwin Chemerinsky, *Federal Jurisdiction* § 2.3.1 (4th ed.2003). The question before the Court becomes: In passing RESPA, what injury did Congress create?

The answer to this question turns on statutory analysis of the RESPA damages provision, an analysis that has divided federal courts across the country.

### 1. The RESPA Damages Provision

Under RESPA, a person who gives or accepts a "thing of value" pursuant to an agreement that real estate settlement service business "shall be referred to any person" is liable to the "persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service." §§ 2607(a), (d)(2).

The parties (and federal courts) disagree on how to interpret the damages language.[2]

### 2. Past Judicial Interpretation of the RESPA Damages Provision

The first courts to address this issue limited damages to three times any overcharge that resulted from the referral. *Durr v. Intercounty Title Co. of Ill.,* 14 F.3d 1183 (7th Cir.1994). Accordingly, plaintiffs that did not suffer an overcharge had no injury and no standing. *See, e.g., Morales v. Attorneys' Title Ins. Fund,* 983 F.Supp. 1418, 1429 (S.D.Fla.1997); *see also Moore v. Radian Group,* 233 F.Supp.2d 819, 824 (E.D.Tex.2002).

More recently, federal district courts have found that these early cases were wrongly decided, concluding that the earlier cases did not properly interpret the 1983 amendment to RESPA. *See, e.g., Kahrer v. Ameriquest Mortg. Co.,* 418 F.Supp.2d 748, 754 (W.D.Pa.2005) (criticizing *Durr* for concluding, without discussion, that the plain meaning of the statute required an overcharge). Among other provisions, Congress changed the calculation of RESPA damages from three times

**2.** *Compare Carter v. Welles–Bowen Realty, Inc.,* 493 F.Supp.2d 921 (N.D.Ohio 2007) (finding an overcharge necessary for standing), *Williams v. First Am. Title Ins. Co.,* 2005 WL 2219460 (N.D.Miss.2005) (same), *and Contawe v. Crescent Heights of Am., Inc.,* 2004 WL 2244538 (E.D.Pa. Oct. 1, 2004) (same),

*with Yates v. All Am. Abstract Co.,* 487 F.Supp.2d 579, 582 (E.D.Pa.2007) (finding standing without an overcharge), *Robinson v. Fountainhead Title Group Corp.,* 447 F.Supp.2d 478 (D.Md.2006) (same), *and Patton v. Triad Guar. Ins. Corp.,* No. CV 100–132 (S.D.Ga. Oct. 10, 2002) (same).

"the value or amount of the fee or thing of value" to cover "any charge paid for such settlement service." *Id.*

Just this May, an Ohio district court disagreed with the *Kahrer* line of cases, determining that the 1983 amendment's language was not sufficiently clear to evince congressional Intent to overhaul the calculation of RESPA damages. *Carter v. Welles–Bowen Realty, Inc.,* 493 F.Supp.2d 921, 927 (N.D.Ohio 2007).

### 3. *This Court's Analysis*

■ The starting point for interpretation of any statute "Is always its language." *Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 739, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)(identifying the "one, cardinal canon" of statutory construction a court should turn to first before all others).

■ Here, the plain language of the statute favors a finding that damages are not limited to overcharges: violators are liable for "any charge paid" for settlement service "involved in" a violation of RESPA. When "the words of a statute are unambiguous." *id.* at 254, 112 S.Ct. 1146, the "judicial inquiry is complete," *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).

Recently, the court in *Carter v. Welles–Bowen Realty, Inc.* found ambiguity in the use of the word "any." 493 F. Supp 2d at 927. The court determined that if Congress intended to expand liability it would have used the word "all," as it did in a subsequent RESPA section. *Id.* However, the Court agrees with *Kahrer* that "trebling any charge paid ... is more indicative of an intent to include all charges rather than merely [an] overpayment." 418 F.Supp.2d at 754 ("[I]t is simply nonsensical to suggest that Congress still Intended to provide for damages In an amount three times the proscribed payment when it eliminated that very language from the statute."). Even so, the Court turns to other evidence in concluding that there is no distinction between "any" and "all."

The legislative history behind RESPA, another "traditional tool" of statutory construction, *Gen. Dynamics Land Sys. v. Cline,* 540 U.S. 581, 602, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004), supports Edwards' position that an overcharge is not necessary for standing. As first enacted in 1974, RESPA based its damages calculation on the amount of the referral fee, kickback, or other thing of value. Pub.L. No. 93–533 § 8(D)(2), 88 Stat. 1724 (1974) (prior to 1983 amendment). This provision failed to account for "controlled business arrangements" similar to the alleged agreement between Tower City and First American Title, whereby an entity could provide a referral without the direct payment of a referral fee. A 1982 House Committee Report noted that these practices could result in harm beyond an increase in the cost of settlement services:

> [T]he advice of the person making the referral may lose its impartiality and may not be based on his professional evaluation of the quality of service provided if the referrer or his associates have a financial interest in the company being recommended. [Because the settlement service industry] almost exclusively rel[ies] on referrals ... the growth of controlled business arrangements effectively reduce the kind of healthy competition generated by independent settlement service providers.

H.R.Rep. No. 97–532, at 52 (1982).

Based on this concern, Congress exempted controlled business arrangements

from liability only in limited circumstances, § 2607(c)(4), and eliminated the "thing of value" language in the damages provision, replacing it with "any charge paid" for the settlement service, § 2607(d)(2). "[C]alculating the penalty based on the entire amount of the settlement service appears to address situations where no direct referral fee has been paid." *Kahrer*, 418 F.Supp.2d at 755. Indeed, these fee-less situations were the moving force behind Congress' 1983 amendment. See, *e.g.*, H.R.Rep. No. 98–123, at 75 (1983) (expecting that RESPA violators "involved in controlled business arrangements ... shall be ... liable ... in the amount of three times the amount of the charge paid for the settlement service").

Also persuasive is a Department of Housing and Urban Development ("HUD") regulation clarifying that acts that do not create a consumer overcharge can still violate RESPA. *See* 24 C.F.R. § 3500.14(g)(2) ("[The presence of an overcharge] is irrelevant In determining whether the act is prohibited."). Although this regulation is unrelated to the issue of damages under RESPA, it supports Edwards' proposition that Congress intended to create a broad right to be free from settlement services premised upon referral agreements.[3]

Edwards need not have suffered an overcharge to invoke the protection of RESPA. By its 1983 amendment, Congress created a right to be free from referral-tainted settlement services as demonstrated by both the statute's text and legislative history. If Edwards can prove her claim, there is a statutory injury fairly traceable to Defendants' action and redressable by a favorable decision. Ac-

cordingly, this Court has subject matter jurisdiction over the case.

B. *Motion to Dismiss for Failure to State a Claim*

■■■■ Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. A complaint must allege enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Dismissal is proper under Rule 12(b)(6) only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988). The court must accept all material allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

Defendants claim that Edwards' Complaint does not state a claim under RESPA for two reasons: First, her claim is barred by the statute of limitations. Second, Defendants' alleged actions, even if true, do not violate RESPA.

1. *Edwards' Claim is Not Time–Barred.*

■■■■ The statute of limitations for private plaintiffs suing under RESPA is one year from the "date of the occurrence of the violation." § 2614. Defendants ask the Court to find that any violation, If it exists, was triggered in 1998, when First American allegedly paid $2 million to Tower City in exchange for an exclusive referral agreement. (Mot 10.) Defendants' re-

---

**3.** Defendants do not argue that any overcharge-free referral is exempt from RESPA, only that these referrals are property pursued by the government under § 2607(d)(4) which authorizes the Secretary of HUD, state attorneys general, and state insurance commissioners to request injunctive relief under RESPA. (Reply 3.)

quest would lead to an absurd result. Two conspirators could form an exclusive referral agreement, but delay the referrals for one year, escaping all liability and allowing those companies to "break the law with impunity." (Opp'n 16.)

Rather, Congress has provided a right to be free from referral-tainted settlement services. As in *Snow v. First American Title Insurance Co.*, the "ill occurs, if at all, when the plaintiff pays for the [tainted] service, typically at the closing. Plaintiffs could have therefore sued at that moment, and the standard [is] that the limitations period commences when the plaintiff has a complete and present cause of action." 332 F.3d 356, 359–60 (5th Cir.2003). Edwards' Complaint—filed within one year of paying for the allegedly tainted service—is timely.

### 2. *Edwards' Allegations State a Claim Under RESPA.*

 Defendants further assert that Edwards' claim cannot succeed because no referral took place as Tower City and First American Title do not provide "distinct services," see 24 C.F.R §§ 3500.2, .14(f)(2), and First American had no duty to disclose its ownership interest in Tower City. (Mot.12–13.)

 Defendants have violated RESPA if "(1)a payment of a thing of value is (2)made pursuant to an agreement to refer settlement business and (3) a referral actually occurs." *Culpepper v. Inland Mortg. Corp.*, 132 F.3d 692, 696 (11th Cir.1998).

Here, Edwards alleges that Defendants paid large sums of money to individual title agencies in exchange for exclusive referral arrangements that funnel all of the agencies' business to Defendants. (Opp'n 1.) For example, in 1998, First American overpaid for a minority interest in Tower City. (Compl.¶ 15.) By overpaying, First American provided Tower City with a thing of value. In exchange for this "thing of value," Tower City allegedly stopped referring its title 17 insurance business to the other underwriters with which it had long dealt, and began referring virtually all of its title insurance business to First American Title. (Compl.¶ 20.) Should Edwards' allegations prove true, then both an agreement to refer settlement business and actual referrals were present, meeting *Culpepper's* requirements.

Defendants' argument that no referral took place rests upon facts outside of Edwards' Complaint and is better suited for argument in a motion for summary judgment Finally, § 2607(c) provides a safe harbor only for entities operating under an affiliated business arrangement that discloses the existence of that arrangement to customers. Because Edwards alleges that she was not notified of any arrangement between First American and Tower City (Compl.¶ 3), her claim survives.

## III. *RULING*

Because injury under RESPA is not limited to an overcharge and Edwards' Complaint states a claim upon which relief can be granted, Defendants' Motion to Dismiss is DENIED.

Defendants must answer Edwards' Complaint on or before October 31, 2007.

IT IS SO ORDERED.